UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GOODE TIME PRODUCTIONS, L.L.C. | § § § | |
| v. | § § § § § | CIVIL ACTION NO. 4:19-CV-58-SDJ |
| JOEL JUST d/b/a UPTOWN CAROLERS | | |

**MEMORANDUM OPINION & ORDER**

"Christmas may not bring a single thing; still, it gives me a song to sing." So said Charles Dickens, author of the 1843 classic, *A Christmas Carol*. The business of singing Christmas carols professionally is the origin of the strife between Plaintiff Goode Time Productions, L.L.C. ("Goode Time") and Defendant Joel Just. Goode Time, a Christmas caroling company, filed this copyright-infringement action against Just, the founder and owner of a competing Christmas caroling company, for allegedly copying and performing Goode Time's "show." According to Goode Time's Amended Complaint, (Dkt. #23), Goode Time's show consists of copyrighted sound recordings, a copyrighted compilation of Christmas songs, and a copyrighted script, all of which Goode Time alleges Just copied in order to train performers at his company to perform a virtually identical show.

Goode Time has filed a Motion for Partial Summary Judgment, (Dkt. #29, #32), asking the Court to find Just liable for infringing Goode Time's copyright in eighteen sound recordings and a script. Goode Time further requests an award of actual

1

damages, disgorgement of Just's profits, and a permanent injunction enjoining Just from further infringing Goode Time's copyrights.

Having considered the motion, the record, and the applicable law, the Court concludes that Goode Time has produced evidence, not subject to any genuine dispute, that conclusively establishes Just infringed copyrights owned by Goode Time in eighteen sound recordings. However, a genuine dispute exists as to whether Just infringed a copyright owned by Goode Time in the script.

And, although Just is liable as a matter of law for infringement with respect to Goode Time's eighteen sound recordings, there is a genuine dispute regarding Goode Time's actual damages and Just's infringement-related profits. For this reason, the Court is unable to determine at this stage whether Goode Time is entitled to a permanent injunction. Goode Time's Motion for Partial Summary Judgment, (Dkt. #29, #32), is therefore **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

Goode Time was founded in Los Angeles in 2006 by John Hartmann and Tony Duran. (Dkt. #35-1 at 14–15). Goode Time produces a live, musical, holiday-themed show that is performed at venues around the country. *See* (Dkt. #35-1 at 11, 105). Goode Time's show consists of performers dressed in Victorian-era attire singing holiday songs and performing scripted routines such as jokes and stories that correspond with the songs. *See* (Dkt. #46-1). For example, a Goode Time performer

2

may introduce a song with a scripted joke or story that relates to the subject matter of the song. *See, e.g.*, (Dkt. #46-1 at 14).

Goode Time does not have any employees; rather, it considers its performers independent contractors. (Dkt. #35-1 at 16–18). In order for Goode Time's contractors to perform the show as Goode Time wants it, Goode Time provides them with training and rehearsal materials. (Dkt. #35-1 at 11). Among these materials are Goode Time's sound recordings, compilation of music, and script—the materials that are the subject of this copyright-infringement lawsuit. (Dkt. #35-1 at 17, 95). As part of their contract, the performers agree not to distribute these materials and to return them at the end of their arrangement with Goode Time. (Dkt. #56-6 at 1).

Goode Time's eighteen sound recordings at issue in this motion are recorded performances of eighteen Christmas songs. (Dkt. #29-4). The record is not clear on exactly when or how these sound recordings came to be, but the record does establish that the voices included on the recordings include those of Goode Time founders John Hartmann and Tony Duran, as well as other singers who contracted to perform for Goode Time. (Dkt. #29-7 at 71). The sound recordings are not sold or otherwise publicly distributed. Goode Time provides the recordings only to its contractor–performers for the purpose of providing the singers an example of how the songs should be performed. (Dkt. #56-5 at 47).

Goode Time's script contains written introductions, jokes, and stories that correspond to different songs performed by Goode Time. (Dkt. #46-1 at 2–19). The

3

script instructs Goode Time's performers on what to say when introducing a song and how to act. *See* (Dkt. #46 at 2–19). The record is also not clear as to how or when this script was written, but it appears that Goode Time has been providing the script to its contractor–performers for years. (Dkt. #34-8 at 8). Like the sound recordings at issue, Goode Time does not sell or otherwise publicly distribute its script. Goode Time's contractor–performers use the script to rehearse and perform it from memory. (Dkt. #56-5 at 47).

In 2012, Goode Time expanded its show into the Dallas area. At that time, Defendant Just contracted to perform for Goode Time in Dallas and was provided with Goode Time's training materials. (Dkt. #29-5). The following year, Just started his own caroling company, which he called Uptown Carolers, and began soliciting business in the Dallas area. (Dkt. #29-7 at 18). As Just began soliciting performers for his show, some Goode Time performers left Goode Time to perform for Just's company. (Dkt. #29-7 at 59–60). To aid in training his performers, Just distributed to them copies of some of the same sound recordings used by Goode Time. (Dkt. #29-7 at 91, 95); *compare* (Dkt. #29-4, Ex. C) *with* (Dkt. #29-12, Ex. K). Just continued to use these recordings to train his carolers until 2019. (Dkt. #58-7 ¶ 7). Just also provided a script to his performers that is almost identical to a portion of the script used by Goode Time, with one of the few differences being that the script's references to "Goode Time" were changed to "Uptown." *Compare* (Dkt. #29-3) *with* (Dkt. #29-9).

4

Just acknowledges that he made these changes to make the script applicable to his company. (Dkt. #29-7 at 85–86).

After learning that Just owned a company that was performing a show remarkably similar to its own, Goode Time sent Just letters requesting that he cease and desist use of Goode Time's materials and the performance of shows substantially similar to Goode Time's. (Dkt. #29-11). After these efforts proved ineffective, Goode Time applied to the United States Copyright Office for a copyright registration in its sound recordings, compilation of songs, and script. (Dkt. #29-2). Goode Time then filed this lawsuit alleging that Just infringed its copyright of these materials. (Dkt. #1).

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere

5

existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. ANALYSIS

**A. Goode Time's Certificate of Registration**

In order to file a lawsuit for copyright infringement, a plaintiff must first register its copyright claims with the United States Copyright Office. 17 U.S.C. § 411(a). A plaintiff will be deemed to have satisfied this requirement if the plaintiff produces a certificate of registration unless the certificate is shown to be invalid under 17 U.S.C. § 411(b)(1). Under that provision, a certificate is invalid only if the registrant knowingly included false information on the application, and the information was material to the Copyright Office's decision to approve registration.

6

*Id.* Otherwise, a certificate of registration authorizes a plaintiff to commence a suit for infringement—even if it contains inaccurate information. *Id.*

Goode Time owns a copyright registration numbered SRu 1-362-980 with an effective date of registration of November 29, 2018. The certificate covers sound recordings, including the eighteen recordings at issue in this motion, a compilation of songs, and the script. Goode Time commenced this lawsuit on January 25, 2019. Therefore, Goode Time satisfied 17 U.S.C. § 411(a) by registering its copyright claims prior to filing this suit for infringement.

Just contends that Goode Time's suit is nonetheless barred under 17 U.S.C. § 411(b)(1) because some information contained on the registration is inaccurate. (Dkt. #48 at 4). Specifically, Just argues that Goode Time inaccurately stated that it was the author of the works, provided an inaccurate date of completion, and inaccurately registered the works as unpublished. (Dkt. #48 at 4–8). Further, Just contends that the Court is required to refer the question of materiality to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2). (Dkt. #58 at 6). The purpose of referral would be to allow the Register to inform the Court whether any of these alleged inaccuracies, if known, would have affected the Copyright Office's decision to register the works. 17 U.S.C. § 411(b)(2). However, as explained below, Just has failed to cite sufficient evidentiary support for his position that Goode Time knowingly made false representations on its application for copyright registration. The Court

therefore declines to refer the question of materiality to the Register of Copyrights, and Goode Time's certificate of registration is valid.

The Copyright Office has already indicated its view on the materiality of two of the three alleged inaccuracies by accepting Goode Time's application for supplementary registration. On February 4, 2020, the Copyright Office accepted Goode Time's supplementary-registration application in which Goode Time corrected the authorship information and the date of completion. (Dkt. #52-2). The supplementary registration clarifies that the works were completed in 2018 rather than 2008 and that Tony Duran and John Hartmann—not Goode Time—are the authors of the works. (Dkt. #52-2). In its application for a supplementary registration, Goode Time informed the Copyright Office that the author and date information on the original application were inaccurate, and the Copyright Office nonetheless accepted the application. Accordingly, there is no need to refer these questions to the Register of Copyrights. *See Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2019 WL 3978414, at \*4 (N.D. Miss. Aug. 22, 2019) (declining to refer the question of materiality to the Register of Copyrights where the Copyright Office accepted an application for a supplementary registration correcting the inaccuracies).

The only additional alleged inaccuracy is that Goode Time incorrectly registered its works as unpublished. While the Court does not agree that all the materials subject to Goode Time's copyright registration are published, the Court

8

agrees, based on undisputed facts, that the scripted material Just is accused of copying is a published work that was inaccurately registered as unpublished.

"The offering to distribute copies or phonorecords to a group of persons for purposes of . . . public performance . . . constitutes a publication." 17 U.S.C. § 101; *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1198–99 (9th Cir. 1996) (holding that a video was published once it was offered to a single school for use in its public classrooms). Goode Time does not dispute that its independent contractors constitute a group of persons. Nor does Goode Time dispute that it distributes its script to its independent contractors so they can publicly perform the bits and routines contained therein. Because Goode Time has distributed its script to a group of persons for the purpose of public performance, Goode Time's script has been published within the meaning of the Copyright Act.

Despite the conclusion that Goode Time's script is published, Goode Time's registration is still valid unless Goode Time knowingly misled the Copyright Office. *See* 17 U.S.C. § 411(b)(1)(A). There is no evidence in the record suggesting that, in registering the script as unpublished, Goode Time knowingly misled the Copyright Office. To the contrary, Goode Time has continued to argue in good faith that its works are unpublished and has submitted materials from the Copyright Office that it relied on in forming its position. *See* (Dkt. #57-4).

Just argues that Goode Time intentionally misled the Copyright Office by registering its works as unpublished in order to save money by registering all of its

9

materials in a single registration. (Dkt. #48 at 7). Notably, Just does not cite a single piece of evidence to support this allegation, and the Court is unaware of any such evidence in the record. Without evidence of a knowing misrepresentation, a copyright registration can be deemed valid without referring the question of materiality to the Register of Copyrights. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 278 (5th Cir. 2020). Accordingly, the Court concludes that Goode Time's copyright registration is valid, and Goode Time has fulfilled the registration prerequisite to filing a suit for infringement.

### B. Goode Time's Infringement Claims

To prevail on a claim for copyright infringement, a plaintiff must prove 1) that the plaintiff owns a valid copyright in the work at issue, and 2) that the defendant copied constituent elements of the work that are original. *Gen. Universal Sys, Inc.. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). Ownership of a valid copyright requires proof that the work is original and copyrightable. *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004) (internal citation omitted). To be considered an original work, the author must have independently created the work using some minimal degree of creativity. *Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Furthermore, a valid copyright-registration certificate constitutes *prima facie* evidence that the registrant owns a valid copyright. 17 U.S.C. § 410(c). But in the case of a published work, the

10

registration certificate serves as *prima facie* evidence of ownership only if the copyright was registered within five years of the first publication. *Id.*

A plaintiff can prove copying by showing that the defendant had access to the work and that the infringing work is probatively similar to the copyrighted work. *Gen. Universal*, 379 F.3d at 141. The element of copying is also satisfied "if the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142 (quoting *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 395 (5th Cir. 2001)).

### i. The Sound Recordings

Goode Time moves for summary judgment on its infringement claim with respect to the eighteen sound recordings contained in (Dkt. # 24-4, Ex. C). Just admits that he used copies of these recordings to train his performers until 2019. Accordingly, the only potential fact issue is on the first element—whether Goode Time owns a valid copyright in the sound recordings.

Sound recordings are copyrightable works of authorship under 17 U.S.C. § 102(a)(7). In the case of a recorded musical performance, a copyright in the sound recording is distinct from a copyright in the underlying musical work. *Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942, 946 (5th Cir. 2009). Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). If there are multiple authors, then each is co-owner of the copyright. *Id.* In the case of a sound recording, the person featured on the sound recording is generally considered the

11

author of the work. *Anderson v. Baker*, No. 4:14-CV-1211, 2014 WL 2434195, at *11 (S.D. Tex. May 28, 2014).

The eighteen sound recordings at issue here feature a small group of singers jointly performing Christmas songs. Just does not dispute that two of the singers featured on the recordings are John Hartmann and Tony Duran—Goode Time's founders—and that Hartmann and Duran are therefore co-authors of the sound recordings. (Dkt. #48 at 5). Goode Time has also produced evidence in writing, signed by Hartmann and Duran, indicating that Hartmann and Duran transferred to Goode Time all of their copyright interests in works related to Goode Time's business operations.[1] (Dkt. #56-3). Accordingly, Goode Time has established that there is no genuine issue of material fact regarding its ownership of the copyright in the sound recordings.

Just argues that Goode Time cannot own a copyright in the eighteen sound recordings because the songs performed on the recordings are commonly performed

---

[1] 17 U.S.C. § 204(a) requires a transfer of copyright ownership to be memorialized in a writing signed by the transferors. An oral transfer is still valid even if it is memorialized in a writing created years later. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592 (7th Cir. 2003) (holding an oral transfer valid where the transferor first created a signed writing memorializing the transfer five years later). Furthermore, because section 204(a) is meant only to govern disputes arising out of competing claims for copyright ownership, an alleged third-party infringer cannot challenge the sufficiency of a transfer when the transferor and transferee are in agreement that the copyright was transferred. *Id.* at 593. *See also Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 394 (5th Cir. 2005) ("[C]ourts are hesitant to allow an outside infringer to challenge the timing or technicalities of the copyright transfer."). The record is clear that Hartmann and Duran are in agreement that they transferred to Goode Time their copyright interests in works related to Goode Time's business.

12

and are in the public domain. (Dkt. #34 at 4–6). In so arguing, Just fails to take into account the distinction between sound-recording copyrights and copyrights in the underlying music. This motion concerns the former. Goode Time does not claim a copyright in the actual songs performed in the sound recordings; it claims a copyright in the recordings themselves. Performing the same songs as those featured on Goode Time's sound recordings would not constitute infringement; it is the copying and use of Goode Time's specific recordings that constitutes infringement. And Just does not dispute that he distributed copies of these specific recordings to his performers.

Just further argues that because Goode Time filed seventy-five sound recordings with the Copyright Office, Goode Time cannot enforce its copyright in only eighteen of them. (Dkt. #40 at 2–4). None of the authority cited by Just supports such an all-or-nothing requirement. A single sound recording is a copyrightable work of authorship. *See* 17 U.S.C. § 102(a)(7). And it is undisputed that Goode Time has an ownership interest in each individual recording. Goode Time may enforce its ownership rights over any number of recordings in which it has an ownership interest.

Finally, Just argues that despite Goode Time's ownership interest in the copyright of the sound recordings, Goode Time cannot sue for infringement because Goode Time is only a joint owner, sharing its ownership with the independent contractors who are also featured on the recordings. (Dkt. #48 at 5). This argument misstates the law. Joint owners of a copyright may pursue actions for infringement

13

independent of each other. *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007); *see also Corbello v. Devito*, 777 F.3d 1058, 1065 (9th Cir. 2015) (noting that "the right of one joint-owner to sue third-party infringers without joining any of his fellow co-owners" is a "well-settled principle of copyright law"). Accordingly, nothing bars Goode Time from enforcing its copyright in the eighteen sound recordings at issue here.

Because there is no genuine issue of material fact regarding Goode Time's ownership of a valid copyright in and Just's copying of the eighteen sound recordings, the Court finds that Goode Time is entitled to summary judgment on this issue.[2]

### ii. The Script

Goode Time also moves for summary judgment on its infringement claim with respect to its script. Based on the certificate of registration and the materials Goode Time filed with the Copyright Office, Goode Time's script consists of fifteen pages of written materials. *See* (Dkt. #46-1 at 2–19). Goode Time alleges that Just copied the seven pages of the script titled "Bits and Routines." To be sure, the script used by Just is nearly identical to this portion of Goode Time's script, and Just admits that he altered the script only in order to change references from "Goode Time" to

---

[2] In addition to his arguments, Just responds to Goode Time's motion with a list of eight "affirmative defenses," the majority of which are devoid of any factual allegations or legal authority that might demonstrate their applicability. (Dkt. #34 at 11–12). "Summary judgment may not be thwarted by conclusional allegations [or] unsupported assertions . . . ." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Accordingly, the Court only considers and addresses the defenses for which Just provided some argument in his briefing.

"Uptown." However, the Court concludes that there is a genuine issue of material fact as to whether Goode Time owns the copyright in the script.

A certificate of registration from the Copyright Office for a published work constitutes *prima facie* evidence of copyright ownership only if obtained within five years of the work's first publication. 17 U.S.C. § 410(c). As explained above, the "bits and routines" portion of Goode Time's scripted materials is a published work because Goode Time distributes it to independent contractors who publicly perform the scripted material. *See id.* § 101. The record does not indicate when Goode Time began offering this script to independent contractors for the purpose of public performance, but Goode Time alleges that Just had access to the script as an independent contractor in 2012. Therefore, the script was published at least five years before November 29, 2018—when Goode Time registered the script with the Copyright Office. Accordingly, Goode Time's certificate of registration does not serve as *prima facie* evidence that it owns the copyright in the script.

Goode Time does not claim that it is the author of the script as a work made for hire. Accordingly, Goode Time can own a copyright in the script only if it obtained the copyright through a valid transfer. Goode Time contends that its founders John Hartmann and Tony Duran are authors of the script, and that they conveyed the copyright to Goode Time.

In support of its contention that its founders authored the script, Goode Time cites two deposition statements by John Hartmann. In response to a question about

15

what constitutes Goode Time's show, Hartmann stated in relevant part: "We wrote intros. We wrote jokes." (Dkt. #29-10 at 11). Then, when asked about whether the show centered around singing, Hartmann responded in relevant part: "[W]e created bits and routines." (Dkt. #29-10 at 11).

It is not clear from Hartmann's responses that he was testifying as to who specifically authored the script. He was not responding to questions about authorship; he was responding to general questions about the nature of Goode Time's show, and therefore, his responses could be interpreted as vague, generalized descriptions of how Goode Time's show operates rather than a specific description of how the script came to be. For example, in his second response, Hartmann continued: "[W]e created bits and routines and whole choreography, and we don't just stand there and sing. We do a show." (Dkt. #29-10 at 11). Despite Hartmann's use of the word "we" in reference to standing, singing, and performing the show, this statement surely does not amount to testimony that all of Goode Time's shows are performed by Hartmann and his co-owner; the record is clear that Goode Time hires independent contractors to perform its show. If Hartmann's use of "we" when discussing performance of the show refers to Goode Time's independent contractors, then Hartmann's use of "we" when discussing the creators of the script could as well. Hartmann's statements are at best ambiguous as to the issue of authorship.

Not only do Hartmann's statements constitute vague evidence of authorship, but when pressed for details about how the script came to be, Hartmann struggled to

16

provide such information. He could not say when the script was created, nor could he say with certainty how the script was written. *See* (Dkt. #35-1 at 53–54) (stating that he "didn't keep track" of when the script was written and that he "think[s]" he wrote it on a computer).

Furthermore, the portion of the scripted material labeled "Carolers Cheat Sheet" contains the name "Joshua Hughes" at the top of each page rather than the names of either of Goode Time's founders. (Dkt. #46-1 at 9–11). This raises doubts as to whether either of Goode Time's founders authored this portion of the script. And if one part of Goode Time's scripted material could have been authored by someone other than Goode Time's founders, then, without contrary evidence, there is no reason to believe the other parts of the script could not have been as well.

Drawing all reasonable inferences in favor of Just, the Court concludes that there is a genuine issue of material fact regarding the authorship of Goode Time's script and, accordingly, Goode Time's ownership of the copyright. Goode Time has failed to meet its burden and is therefore not entitled to summary judgment on this issue.

## C. Remedies

### i. Actual Damages

Although Goode Time requests an award of its actual damages resulting from Just's infringement, Goode Time has not produced evidence of such damages. In its most recent briefing, Goode Time states that its actual damages "cannot be

17

adequately calculated." (Dkt. #46 at 5). Having produced no evidence of its actual damages, Goode Time has failed to establish that there is no genuine issue of material fact on this issue.

### ii. Profit Disgorgement

Goode Time also requests an award of Just's profits from the previous three years pursuant to 17 U.S.C. § 504(b). Using Just's tax returns, Goode Time calculates Just's gross revenue from the previous three years to be $124,200.50 and seeks to recover accordingly. (Dkt. #46 at 6).

A copyright owner seeking disgorgement has the burden to demonstrate the infringer's gross revenue that is attributable to the infringement. *Powell v. Penhollow*, 260 F. App'x 683, 686 (5th Cir. 2007). This requires the copyright holder to establish a nexus between the infringement and the infringer's revenue. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). Because Goode Time is entitled to summary judgment only with regard to the sound recordings, to get profit disgorgement at this stage, Goode Time needed to establish a nexus between Just's use of the eighteen sound recordings and the profits sought to be recovered. Goode Time has not attempted to establish such a nexus. Therefore, Goode Time has not indisputably shown that the entirety of Just's revenue as reflected on his tax returns is attributable to his use of eighteen of Goode Time's sound recordings. Accordingly, Goode Time is not entitled to the profits it requests at summary judgment.

### iii. Permanent Injunction

Goode Time also requests a permanent injunction enjoining Just from further infringing Goode Time's copyrights. The Copyright Act authorizes district courts to issue permanent injunctions "on such terms as [they] deem reasonable to prevent or restrain infringement." 17 U.S.C. § 502(a). However, a finding of liability for infringement does not automatically entitle a plaintiff to a permanent injunction. *Van Stry v. McCrea*, No. 2:19-CV-00104-WCB, 2020 WL 1911391, at *2 (E.D. Tex. April 20, 2020). To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

The primary injury alleged by Goode Time has been Just's solicitation of Goode Time's performers and clients. (Dkt. #46 at 5). Goode Time has also alleged harm to its reputation. (Dkt. #29 at 12). However, Goode Time has failed to detail the nature and extent of these harms, precluding a conclusion that these injuries are irreparable. Furthermore, Goode Time has failed to establish a causal connection between these injuries and Just's use of its eighteen sound recordings.

Additionally, because Goode Time's actual damages and entitlement to profit disgorgement remain to be determined at trial, Goode Time cannot yet demonstrate

19

whether these remedies are inadequate to compensate for its injuries. Accordingly, Goode Time has not shown that it is entitled to a permanent injunction at this stage of proceedings.

### IV. CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that Plaintiff Goode Time Productions, L.L.C.'s Motion for Partial Summary Judgment, (Dkt. #29, #32), is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** with respect to Defendant Joel Just's liability for infringement of Goode Time's copyrights in eighteen sound recordings. The Motion is **DENIED** with respect to Just's alleged infringement of the copyright in the script, as well as Goode Time's requests for actual damages, profit disgorgement, and a permanent injunction.

It is, therefore, **ORDERED** that Defendant Joel Just d/b/a Uptown Carolers is adjudged liable to Plaintiff Goode Time Productions, L.L.C. as a matter of law on Plaintiff's claim for infringement of Goode Time's copyrights in eighteen sound recordings. The requested remedies for Defendant's actions, including Plaintiff's requests for actual damages, profit disgorgement, and a permanent injunction, remain for trial.

**So ORDERED and SIGNED this 14th day of September, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE